Filed 1/9/23 Sparks v. Scully CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SMOKEY SPARKS, | |
| Plaintiff and Appellant, | E074779 |
| v. | (Super.Ct.No. CIVDS1614646) |
| HEYSHIN KIM SCULLY, Individually and as Trustee, etc. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Affirmed.

Smokey Sparks, in pro. per., for Plaintiff and Appellant.

Diana J. Carloni for Defendants and Respondents.

1

Plaintiff and appellant Smokey Sparks (Plaintiff) sued defendants and respondents Heyshin Kim Scully (Heyshin)[1], James Scully (James), and the Scully Joint Living Trust. The causes of action included breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment. The trial court found Plaintiff failed to meet her burden of proof and entered judgment in favor of the defendants. Plaintiff contends the trial court erred because she met her burden of proof. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. EVIDENCE

#### 1. BACKGROUND

In July 2014, Wayne Hindman (Hindman) leased a commercial space (the Property), in Apple Valley (the City), from Heyshin and James (collectively, the Scullys). The lease was for three years, expiring in June 2017. Hindman leased the Property for the purpose of opening a videogame arcade.

Hindman had an agreement with Bounce Village regarding the arcade business: Hindman would manage the business, and Bounce Village would provide and maintain the videogame machines. Further, Hindman agreed to "provide any licensing or conditional use permit required by the city." Hindman and Bounce Village would each take half of the revenue from the arcade business. Bounce Village was owned by

---

[1] We use first names for the sake of clarity; no disrespect is intended.

Plaintiff and Brian Toupal.[2]  Bounce Village moved 105 videogame machines (the machines) into the Property.

Hindman applied to the City for a conditional use permit.  The City would not issue the permit until the restroom at the Property met the requirements of the Americans with Disabilities Act.  Hindman spoke with Heyshin about the Scullys sharing in the cost of renovating the restroom, which required moving a structural wall and rerouting plumbing.  Heyshin declined to share in the costs.  Hindman told Heyshin that because he was unable to open the arcade due the restroom, he would stop paying rent.  Hindman stopped paying rent in October 2014.

### 2.   *OPTION AGREEMENT*

Plaintiff told Heyshin that she was interested in continuing with the arcade business at the Property.  On January 1, 2015, Heyshin met with Brian Toupal of Bounce Village.  Plaintiff did not attend the meeting.  The meeting resulted in an option agreement for Plaintiff to lease the Property, in the event Hindman was evicted.

The option agreement read in relevant part, "Since October 2014, [Hindman] has not paid rent on the premises.  Eviction notices ha[ve] been posted and [Hindman] has hired a lawyer in defense.  [¶]  In the event that [Hindman] is evicted, Heyshin would like to continue to open the arcade.  Heyshin gives [the] option for [Plaintiff] to continue to develop and open the arcade in the case that [Hindman] is evicted.  [¶] Heyshin and [Plaintiff] will settle the operation terms of the arcade in this case.  After

---

[2]  In the record, Toupal is also spelled Toepel.  It is unclear which spelling is correct.

3

the point of eviction Heyshin will provide keys and access until terms are settled." Heyshin orally agreed that Bounce Village could store the machines at the Property.

### 3. *ORAL PARTNERSHIP AGREEMENT*

#### a. Heyshin's Understanding

Separate from the option agreement, when speaking with one another on January 30, 2015, Heyshin and Plaintiff orally agreed to a 50-50 partnership agreement. Heyshin thought the partnership agreement meant Plaintiff would pay half the cost of the restroom renovation because Heyshin could not afford to pay for the entirety of the renovation.

#### b. Plaintiff's Understanding

Plaintiff thought the oral partnership agreement meant Heyshin would pay for the entirety of the restroom renovation, and then share 50-50 in the revenue from the videogame machines, i.e., the same agreement Bounce Village had with Hindman. Plaintiff thought Heyshin "had promised to keep [the machines] safe when [*sic*] she was ready to get that bathroom renovated." Plaintiff believed that, because she and Heyshin would share in the revenue, a lease for the Property was not necessary and the machines could be stored rent-free at the Property until the restroom renovation was completed.

### 4. *AFTER HINDMAN'S EVICTION*

#### a. Eviction

In March 2015, Hindman and the Scullys settled the unlawful detainer case initiated by the Scullys. Specifically, they agreed that the lease would be terminated and that Hindman would remove his belongings from the Property within seven days.

4

Hindman did not tell Plaintiff to remove the machines from the Property because he believed Plaintiff and Heyshin had "come to some sort of arrangement" in regard to having an arcade at the Property.

### b. Heyshin's Version of Events

According to Heyshin, Plaintiff "disappeared" or was "hiding" after Hindman's eviction. Plaintiff did not pay rent to the Scullys. Heyshin called Plaintiff, but Plaintiff did not answer or respond to Heyshin's voicemails. Heyshin went to Plaintiff's house, but Plaintiff did not answer the door. After the Scullys were unable to locate Plaintiff, they hired a lawyer to assist in removing the machines from the Property.

On April 22 and June 10, 2015, Heyshin mailed Plaintiff notices of abandonment reflecting the machines would be publicly auctioned. The notices were returned as undeliverable, despite being addressed to Plaintiff's home, because Plaintiff has a post office box; Plaintiff never told Heyshin about the post office box. Heyshin tried to personally deliver the notice to Plaintiff at Plaintiff's house "a few times," but Plaintiff did not answer the door. On August 14 and 21, 2015, in the *Apple Valley News*, Heyshin published a notice of public auction of the abandoned machines.

### c. Plaintiff's Version of Events

Plaintiff denied that she had "disappeared." Plaintiff's daughter became ill and was in the intensive care unit in February 2015. As a result, Plaintiff was often at home caring for her daughter, rather than at the Property maintaining the machines. Plaintiff did not open the door at her house for Heyshin because Plaintiff "didn't even know

5

[Heyshin] was at [Plaintiff's] house." Plaintiff did not see the notice in the *Apple Valley News* because she lives in Hesperia, not Apple Valley.

Plaintiff asserted that she communicated with Heyshin by telephone and text message from March 2015 through July 2015, but Heyshin did not demand rent or removal of the machines or otherwise indicate a problem with the machines being at the Property. Thus, Plaintiff was unaware that Heyshin intended to sell the machines.

5.     *SALE OF THE MACHINES*

On September 6, 2015, Heyshin held a public auction for the machines, but no one attended the auction. In December 2015, Heyshin told a family friend (Friend) to sell the machines, and Friend listed the machines for sale online.

On August 22, 2016, Plaintiff saw the machines listed for sale online and called the phone number listed in the advertisement. During the phone call, Plaintiff advised Friend that Plaintiff owned the machines and they were being wrongfully sold. On August 25, 2016, Plaintiff went to the Property and saw that some of the machines were missing and others appeared to have been stripped for parts. Plaintiff also saw that the restroom had not been renovated. Heyshin had Plaintiff arrested for trespassing. James testified that four of the machines were sold. The remaining machines were still at the Property at the time of trial, in September 2019.

B.     LAWSUIT

Plaintiff filed her lawsuit on September 6, 2016. In the complaint, Plaintiff alleged, "Heyshin . . . orally promised Plaintiff that she would not have to pay rent at the [Property], in exchange for [Heyshin] being able to continue to open the arcade at

6

[the Property], using Plaintiff's machines. Plaintiff agreed to operate the arcade under this oral promise. The Parties agreed to split any revenue from the arcade on a 50-50 basis. [¶] . . . Heyshin . . . assured Plaintiff that the arcade machines would be safe at the [Property] and that she would develop the [P]roperty in order to make sure that it would be able to be used for arcade purposes." Plaintiff asserted, "Heyshin . . . orally promised Plaintiff that she would take care of the repairs and renovation of the bathroom so that the arcade could be opened."

In the breach of contract cause of action, Plaintiff alleged, "[Heyshin] has not renovated the bathroom so that the arcade could open, and [the Scullys] are now selling Plaintiff's property without her consent or a Court order." Plaintiff alleged the same actions and failures constituted a breach of the implied covenant of good faith and fair dealing. In regard to fraud, Plaintiff alleged, "Heyshin . . . made a false promise to Plaintiff, namely that she could operate the arcade on the premises without paying rent, and that [the Scullys] would take care of all permits including renovating the bathroom, without any intention of perform[ing] such acts."

As to the unjust enrichment claim, Plaintiff alleged the Scullys "have illegally confiscated the machines and have received an undeserved 'windfall' in the sale of the [machines] and the retention of the remaining machines. [¶] The foregoing has resulted in the [Scullys] being unjustly enriched by the selling of said machines." Plaintiff sought the imposition of a constructive trust, a declaration that the machines are Plaintiff's property, an injunction restraining the Scullys from selling the machines, actual damages, and punitive damages.

7

## C. JUDGMENT

The trial court issued a tentative decision and proposed statement of decision, which became the final findings and ruling. As to the contract causes of action, the trial court wrote: "The court found the [Scullys] to be more credible. While [Plaintiff] may truly believe there was a contract, the evidence clearly indicates otherwise. [Plaintiff] also was unable to provide evidence that terms were agreed to by each party other than some vague agreement to split proceeds 50-50 with one another." The trial court concluded that "Plaintiff failed to meet her burden of proof that a contract, either oral or written, was entered into between the parties."

As to the fraud cause of action, the trial court found that the Scullys did not promise to store the machines until the Scullys renovated the restroom. The trial court explained that it "did not find [Plaintiff] to be credible when she testified that [Heyshin] promised to keep the arcade machines safe."

For the unjust enrichment cause of action, the trial court found that (1) Plaintiff failed to prove she was the sole owner of the machines because the evidence indicated that Brian Toupal also owned the machines; (2) "there was certainly no evidence presented as to the value of the arcade machines themselves"; (3) there was no evidence of what, if any, money the Scullys received for the four machines that were sold; and (4) "[i]f anyone has been unjustly enriched, it would be [Plaintiff.] Her arcade machines, if they are in fact hers, have been stored in the [Property] since 2015 and she hasn't paid any rent or storage fees. On the other hand, the [Scullys] have had to hire an attorney, proceed by way of publication and trying to give notice that the [machines

8

were] abandoned so that they could see about having the machines removed, and yet they are still there. The [Scullys] have not been able to rent their property and they have obtained nothing from the Plaintiff by way of storage fees."

## DISCUSSION

Plaintiff contends the trial court erred in finding she did not meet her burden of proof because the evidence reflects she had an oral agreement for the Scullys to store the machines until the restroom was renovated.

Plaintiff bore the burden of proof in the trial court. (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 528.) Therefore, the question on appeal is " 'whether the evidence compels a finding in favor of [Plaintiff] as a matter of law. [Citations.] Specifically, the question [is] whether [Plaintiff's] evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) " ' "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' " (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067.)

Heyshin testified that she agreed to store the machines at the Property. Thus, there is no dispute that Heyshin agreed to store the machines. The dispute is whether Heyshin agreed to store the machines until Hindman's eviction was complete, until Plaintiff signed a lease/Plaintiff's option for a lease ended, or until the restroom renovation was complete.

9

Plaintiff testified, "[Heyshin] proposed while she was evicting [Hindman] to keep the [machines] safe." The foregoing evidence indicates that Heyshin was willing to store the machines until Hindman's eviction was complete.

The written option agreement provides, "After the point of [Hindman's] eviction Heyshin will provide keys and access until terms are settled." One could infer from that sentence that Heyshin agreed to store the machines until Plaintiff signed a lease or the option for a lease ended because it implies that Heyshin permitted plaintiff to have rights to the Property after Hindman's eviction and through the signing of the lease.

The foregoing evidence indicates that Heyshin agreed to store the machines until Hindman's eviction was completed, until Plaintiff signed a lease, or until the option for a lease expired. There is not credible evidence of Heyshin agreeing to store the machines until the restroom renovation was completed. However, to the extent there were credible evidence of such, it would be contradicted by the foregoing evidence.

Heyshin testified, in regard to the oral partnership agreement, "It's my building, but I didn't have no money to do improvement. [Plaintiff] come with the half, I come with the half, we do make the arcade happening in there." She further testified, "I ask [Plaintiff] to come half and then [Plaintiff] disappeared after that." When asked, "I believe you did mention that you would finish taking care of the bathroom?" Heyshin replied, "No. Absolutely no."

Heyshin did not testify that the terms of the oral partnership agreement included free storage of the machines. Rather, Heyshin testified that the oral partnership agreement required Plaintiff to pay for half of the restroom renovation, which Plaintiff failed to pay. Thus, the credible evidence of the oral partnership agreement does not support a finding that, as a term of the agreement, Heyshin would store the machines rent-free until the Scullys paid for the restroom renovation.

Plaintiff testified that Heyshin "had promised to keep [the machines] safe when [*sic*] she was ready to get that bathroom renovated." The trial court "did not find [Plaintiff] to be credible when she testified that [Heyshin] promised to keep the arcade machines safe." We must abide by the trial court's credibility finding, therefore, we do not rely upon that portion of Plaintiff's testimony. (*Fabian v. Renovate America, Inc.*, *supra,* 42 Cal.App.5th at p. 1067.)

In sum, there was no consensus among the parties concerning the time limit for storing the machines. The credible evidence reflects the Scullys may have agreed to store the machines only until Hindman's eviction was completed, until Plaintiff signed a lease, or until Plaintiff's lease option ended. Thus, the evidence concerning the length of the storage agreement was not of such character and weight that the trial court had to find that there was an agreement or promise for the Scullys to store the machines until the Scully's paid for the restroom renovation. The trial court did not err.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.